# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br>Applicant<br><br>V.<br><br>BANK OF AMERICAN ACCOUNT NO. xx2827;<br>WELLS FARGO ACCOUNT NO. xx5851;<br>WELLS FARGO ACCOUNT NO. xx1789; and<br>REAL PROPERTY LOCATED AT 4915 PRIMROSE<br>PATH UNIT C, SARASOTA FL, 34242-1564 | Case: 1:20−mc−00084<br>Assigned To : Boasberg, James E.<br>Assign. Date : 9/15/2020<br>Description: Misc.<br><br>Misc. No. _____<br><br>UNDER SEAL |

### UNITED STATES'S EX PARTE APPLICATION TO
### REGISTER AND ENFORCE FOREIGN RESTRAINING ORDERS
### PURSUANT TO 28 U.S.C. § 2467(d)(3) AND 18 U.S.C. § 983(j)

Applicant United States of America, by and through its undersigned attorneys, respectfully submits this application for a restraining order pursuant to 28 U.S.C. § 2467(d)(3)(b)(ii) and 18 U.S.C. § 983(j)(1)(A).  This application seeks enforcement of foreign seizure/restraining orders issued by Sophie Mougenot, Pre-Trial Investigating Judge, Tribunal de Grande Instance of Paris, France in order to preserve the availability of U.S. assets that are subject to forfeiture in France. The assets are to be restrained pending the presentation of a final French confiscation (forfeiture) order to the United States's central authority for execution pursuant to the relevant bilateral treaty.

On February 20, 2020, the Department of Justice's Office of International Affairs referred a mutual legal assistance ("MLA") request from France to the Money Laundering and Asset Recovery Section ("MLARS") of the United States Department of Justice.  The request seeks the enforcement of French seizure/restraining orders issued on May 14, 2019 (the "French Orders"), against the following bank accounts and real property:

1. Bank of America Account No. 003679912827;
2. Wells Fargo Account No. 10103035505851;
3. Wells Fargo Account No. 2000053761789; and
4. 4915 Primrose Path Unit C, Sarasota FL, 34242-1564, Tax Parcel ID 0081050032.

The beneficial owner of the accounts and real property is Christopher Cantell, a target of a French investigation and alleged conspirator of Frederic Artru, an individual under indictment in France for claims sounding in conspiracy, fraud, and money laundering, *inter alia*. *See* Exs. 1A-1C (Certified French Orders).

On September 9, 2020, the French Orders were certified for enforcement by Deborah L. Connor, Chief, MLARS, Criminal Division, U.S. Department of Justice in accordance with 28 U.S.C. § 2467(d)(3) and (d)(3)(B)(ii). *See* Ex. 1 (Certification). Should this Court issue the attached Proposed Order, the U.S. restraint imposed thereby will preserve the assets for confiscation pending the conclusion of criminal and confiscation proceedings in France. Additionally, if this Court issues the restraining order, counsel for the United States will file a *lis pendens* in Sarasota County, Florida, to prevent the sale or encumbrance of the real property identified herein.

## I.     JURISDICTION AND VENUE

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 2467. Venue is proper pursuant to § 2467(c)(2)(B), which provides that "venue shall lie in the district court for the District of Columbia or in any other district in which the defendant or the property . . . may be found."

## II.    BACKGROUND

Since at least 2015, French authorities have been investigating an alleged Ponzi Scheme perpetrated by Frederic Artru and U.S. citizen Christopher Cantell to defraud certain French

investors in SigEx SuperPBX (SPBX), SigEx Ventures Euro Fund (SVEF), and related French entities Cloud Access, Widemobile, and GoTV (together, the "fraudulent companies"). The criminal activity occurred during 2007-2013. Multiple indictments were issued over the course of 2015-2017, charging Artru and others with crimes sounding in conspiracy, fraud, and money laundering. Messrs. Artru and Cantell are alleged to be primarily responsible for the criminal conduct at issue.

According to the French request, during a hearing, the victimized French investors explained that Artru, directly or through the investors' own respective financial intermediaries, as well as through commercial brochures boasting the results of SPBX and SVEF, enticed the investors to invest in the fraudulent companies based on one or more of the following representations. First, it was represented that a portion of the invested sums would be exempt from French wealth and/or income tax. Second, it was represented that the fraudulent companies offered substantial capital gains. Third, the fraudulent companies purported to offer capital insurance, which would provide a repayment of up to 25% of the amount invested within a period of five years, thereby ensuring nearly full coverage of the amount invested. French authorities' subsequent investigation, however, revealed that these representations were false.

The French investigation uncovered fraudulent activity and indicia of money laundering associated with the fraudulent companies' accounts and cash flows. The fraudulent companies appeared to exist only through bank flows that purported to justify a virtual valuation of their shares but engaged in no actual economic activity. Additionally, the fraudulent companies never informed investors that they lacked external financial controls, *e.g.*, a certified public accountant.

French authorities also obtained information from U.S. authorities through MLA requests dated September 7, 2015, and January 27, 2016. This information showed that Cantell directed

U.S. companies Sigex Ventures, Inc. (SVI) Techsource International Inc. (TII), and Techsource Europe Inc. (TEI) (together, the U.S. companies).  These materials combined with the other financial information confirmed that the Ponzi Scheme worked as follows.  French company SPBX received funds from French investors and then transferred those funds to U.S. company SVI.  The U.S. bank account of SVI then provided funds to U.S. company TII, as did a separate account controlled by Cantell.  Finally, TII posed as a customer of SPBX to support its artificial valuation to the French investors.  This pattern continued throughout 2010-2012.  During this same time period, TII made numerous transfers to Cantell.  In 2013, TII also made seven transfers to a Lithuanian company, Memelio Grupe (MG).  Lithuanian authorities confirmed to French authorities that Cantell controlled MG, and that Cantell and his wife, Natiaja Cantell (who is of Lithuanian origin) were signatories on MG's bank accounts.

On December 7, 2016, France indicted Artru for claims sounding in conspiracy, fraud, and money laundering.[1]  On March 28, 2017, Artru was remanded to custody.  Through summonses transmitted via MLA requests from France to the United States on July 28, 2017, and September 13, 2018, as well as through communications with an attorney purporting to represent Cantell, hearings were set for October 31, 2017, November 13, 2018, January 23, 2019, and April 24, 2019.  Cantell never appeared.

Over the course of 2007-2016, nearly 200 investors paid a total of over €4.7 million into the accounts of the fraudulent companies.  Under the guise of invoices, these funds then transited

---

[1] Specifically, Artru is charged with two violations of the French penal code:  fraudulent obtaining by an organized gang (Articles 313-1, 313-2, 313-3, 313-7 and 313-8) and laundering of the product of fraudulent obtaining committed by an organized gang (Articles 324-1, 324-1-1, 324-3, 324-4, 324-5, 324-6, 324-7 and 324-8).  Artru also is charged with a violation of the French Monetary and Financial Code:  unlawful provision of investment services to third parties as a regular occupation (Articles L573-1 & 1, L531-10, L532-1, L531-1, L531-2 and L321-1).

4

into the U.S. accounts of SVI, then to the U.S. accounts of TII and Artru. Finally, the TII and Artru accounts transferred $2,832,576 to Cantell's personal U.S. account and $1.3 million to MG's Lithuanian account. Financial analysis thus shows Cantell received $4,132,576 of the funds invested in the fraudulent companies. No French or Lithuanian account associated with the foregoing companies was seized, as all balances were zero. Cantell has no assets in France. However, Cantell has the following U.S. assets, which together are valued at less than the $4,132,576 attributable to his criminal conduct, and all of which are subject to the French Orders issued on May 14, 2019, by Sophie Mougenot, Pre-Trial Investigating Judge, Tribunal de Grande Instance of Paris, in the amount of $4,132,576, *see* Exs. 1A-1C:

1. Bank of America Account No. 003679912827, Routing No. 063100277;
2. Wells Fargo Account No. 10103035505851;
3. Wells Fargo Account No. 2000053761789; and
5. 4915 Primrose Path Unit C, Sarasota FL, 34242-1564, Tax Parcel ID 0081050032.

### III. LEGAL AUTHORITY

Pursuant to 28 U.S.C. § 2467(d)(3), federal courts are authorized to issue orders to preserve property during the pendency of foreign forfeiture proceedings until receipt of an enforceable, final foreign forfeiture or confiscation judgment. *See* Preserving Foreign Criminal Assets for Forfeiture Act of 2010, Pub. L. No. 11-342, 124 Stat. 3607 (codified as amended in 28 U.S.C. § 2467(d)(3)). Section 2467(d)(3)(A) provides:

> [t]o preserve the availability of property subject to civil or criminal forfeiture under foreign law, the Government may apply for and the court may issue a restraining order at any time before or after the initiation of forfeiture proceedings by a foreign nation.

Section 2467(d)(3)(A) requires that the U.S. restraining order be issued "consistent with subparagraphs (A), (C), and (E) of subparagraph [(d)](1) and the procedural due process

protections for a restraining order under section 983(j) of title 18." 28 U.S.C. § 2467(d)(3)(A). Consequently, the district court may deny enforcement of a foreign restraining order if it finds that the order was obtained without due process, was issued by a foreign court that lacked subject matter jurisdiction, or was obtained by fraud. The statute's cross-references to § 983(j) do not require that criminal or civil forfeiture proceedings be filed in the United States to enforce a foreign court's restraining order, but rather, the foreign criminal or forfeiture proceedings initiated abroad should comport with U.S. notions of due process. *See* 28 U.S.C. § 2467(d)(3)(A)(ii)(II); *see also Luan v. United States*, 722 F.3d 388, 394-97 (D.C. Cir. 2013) (holding that the filing of a foreign civil forfeiture complaint is not required, but that "applicable" foreign criminal proceedings, sufficient to justify the restraint of assets indefinitely pending final forfeiture, should entail "procedural due process protections consistent with those that the filing of an American civil forfeiture complaint" would have afforded). In line with analogous procedures in a domestic civil or criminal forfeiture proceeding under 18 U.S.C. § 983(j), U.S. courts may issue orders appropriate to preserve property during the pendency of foreign criminal or forfeiture proceedings.

Certification by the U.S. Attorney General or his authorized designee that enforcement of the foreign restraining order is in the "interest of justice" is a prerequisite for enforcement of a foreign order. *See* 28 U.S.C. § 2467(b)(2). On May 8, 2017, the Attorney General delegated authority for the certification of orders under this provision to the Assistant Attorney General for the Criminal Division. On October 18, 2018, the Assistant Attorney General for the Criminal Division redelegated authority for certification of orders under this provision where the amount involved is $5 million or less to the Chief of the Money Laundering and Asset Recovery Section. The certification determination is not subject to judicial review. *See* 28 U.S.C. § 2467(d)(3)(B)(ii) and § 2467(b)(2).

## IV. DISCUSSION

### A. The French Orders Meet the Section 2467(d)(3)(A) Criteria for Enforcement.

Section 2467 sets forth the following criteria for considering a request for enforcement of a foreign restraining order: (1) whether the United States and the foreign nation seeking enforcement are parties to a formal, international agreement providing for mutual forfeiture assistance, § 2467(a)(1); (2) whether the Attorney General has determined it would be in the interest of justice to certify the order for enforcement, § 2467(b)(2); (3) whether the order was issued consistent with due process, § 2467(d)(3)(A)(ii)(I); (4) whether the foreign court had subject matter jurisdiction to issue the restraint, *id.*; and (5) whether there is reason to believe the order was obtained by fraud, i*d.*[2] The French Orders meet the criteria for registration and enforcement and, therefore, entry of a U.S. restraining order is necessary and appropriate to preserve the property for confiscation should Cantell be convicted. This Court has enforced French restraints.[3]

#### 1. <u>Agreement on Forfeiture Assistance</u>

First, the U.S. and France are parties to a Mutual Legal Assistance Treaty that entered into force on December 10, 1998.[4] Under Article 11 of that Treaty, the United States is obligated to

---

[2] *See In re Restraint of All Assets Contained or Formerly Contained in Certain Investment Accounts at UBS Fin. Servs., Inc.*, 860 F. Supp. 2d 32, 42 (D.D.C. 2012) ("*In re UBS Accounts*") (asserting that in considering an application for a restraining order under § 2467(d)(3), a "district court should begin with the premise that the foreign proceedings or procedures are in fact compatible with due process"). An affected party with a legally protected property interest may appear in this proceeding to challenge any U.S. restraining order issued as a result of this application by making an affirmative showing that the foreign order or process were defective.

[3] *See, e.g.*, *In re Restraint of Assets Owned or Controlled by Jean-Pierre Nitkowski*, No. 1:14-mc-00708-JDB, ECF No. 2 (D.D.C. July 21, 2014).

[4] *See* Treaty with France on Mutual Legal Assistance in Criminal Matters, U.S.-Fr., Dec. 10, 1998, T.I.A.S. 13010 (2001); *see also* Instrument as Contemplated by Article 3(2) of the Agreement on Mutual Legal Assistance Between the United States of America and the European Union Signed 25 June 2003, as to the Application of the Treaty with France on Mutual Legal Assistance in Criminal Matters Signed 10 December 1998, U.S.-Fr., Sept. 30, 2004, S. Treaty Doc. No. 109-13 (2006) (reaffirming and amending the 1998 bilateral MLAT between the U.S. and France).

assist France in forfeiture matters, including by taking protective measures to immobilize suspected criminal proceeds and instrumentalities. Thus, the first criterion is satisfied.

### 2. Attorney General Certification

Second, the French Orders were certified by the Chief of MLARS on September 9, 2020. In certifying the order, the Chief acknowledged that she considered the facts of the case, the foreign law, the applicable U.S. law, and the circumstances of the judiciary from where the order came, and concluded that enforcement of the foreign restraining order, pursuant to 28 U.S.C. § 2467, is "in the interest of justice." *Id.; see also,* Ex. 1. Thus, the second criterion for enforcement is met.

### 3. Due Process

Third, the French Orders were issued consistent with due process. While the restraining orders were issued *ex parte*, under French law, orders must be communicated to the owners of the affected properties after they are executed. *See* French Code of Criminal Procedure, Art. 706-148. An appeal against any order may be brought within ten days of notice. Appeal would allow a property owner or a third party to access the exhibits related to the order and to challenge the order before the investigating court. *Id.* Notices of the French Orders were communicated to the parties and their attorneys on May 14, 2019. There has been no appeal, so the order is enforceable.

Under French law, confiscation may be ordered for offenses punishable by at least one year in prison, and the confiscation can involve all property owned by the convicted person up to the value of the criminal profits. *Id*. at Art. 131-21-9. The crimes for which the co-conspirators were charged all carry a potential prison sentence of well over a year.

### 4. Subject Matter Jurisdiction

Fourth, the issuing Court (Tribunal de Grande Instance de Paris, France), is authorized to issue the French Orders. As under U.S. law, under French law venue for a money laundering or

other criminal charge lies wherever one or more material actions took place. Here, numerous acts of the co-conspirators took place within the jurisdiction of the Paris courts, and the case is being investigated by the Financial Brigade of the Direction de la Police Judiciare of Paris in conjunction with the Paris Public Prosecutor. French Code of Criminal Procedure Article 706-148 authorizes the investigating judge to carry out special criminal seizures of property subject to forfeiture. The French Court's jurisdiction to issue the French Orders has not been challenged in this investigation. The United States has no reason to believe that the French Court is not the proper court nor that it lacks subject matter jurisdiction. Taking into account the presumption of regularity of foreign judicial proceedings and these facts, the fourth criterion for enforcement is met. *See In re UBS Accounts*, 860 F. Supp. at 42.

### 5. **Absence of Fraud**

Fifth, given the presumption of regularity in foreign proceedings and the facts known to the United States, there is no reason to believe that the French Orders were obtained by fraud on the part of French authorities. Accordingly, the five criteria pertinent in considering an application to enforce and register a foreign restraining order are satisfied.

### B.     **Dual Forfeitability Is Satisfied.**

In an application to enforce a foreign restraining order (as opposed to a final judgment), the United States, on a plain reading of the statute, may not need to show that the criminal conduct supporting the foreign restraining order also would give rise to forfeiture if it had been committed in this country. *See* 28 U.S.C. § 2467(a)(2)(A) (defining "forfeiture or confiscation judgments" in such a way that requires a showing of dual forfeitability); § 2467(d)(3)(A)(ii)(I) and (d)(3)(B)(ii) (setting out the procedures for enforcement of a foreign restraining order with no mention of, nor cross-reference to, the subsection of the statute concerned with dual forfeitability). One judge has

applied the requirement without discussion, and another declined to resolve the question of whether dual forfeitability must be demonstrated by the United States in the restraint phase. *Compare In re Seizure of Approx. $12,116,153.14 and Accrued Interest in U.S. Currency*, 903 F. Supp. 2d 19, 30 (D.D.C. Nov. 9, 2012) (stating that dual forfeitability is a requirement for enforcement of a foreign restraining order and deciding that the United States satisfied it), *with In re UBS Accounts*, 860 F. Supp. 2d at 41 ("[Section 2467(d)(3)] does not expressly incorporate the dual forfeiture requirement that applies to final orders of forfeiture. . . however, the Court need not resolve the question . . . because, even assuming its applicability, it is satisfied in this case"). As a practical matter, the United States acknowledges that dual forfeitability may become relevant if France asks the United States to enforce a final confiscation judgment, and the United States applies to enforce such a final judgment.

Dual forfeitability, nevertheless, is satisfied because the conspirators' underlying conduct would be chargeable under U.S. criminal law giving rise to forfeiture, had their conspiracy been committed here. Specifically, the conspirators are charged for crimes including conspiracy, fraud, and money laundering. Money laundering is an offense authorized for forfeiture under U.S. law, *see* 18 U.S.C. § 981(a)(1)(A) (civil forfeiture of any property involved in a transaction in violation of the money laundering statutes) and § 982(a)(1) (criminal forfeiture of property involved in money laundering offenses), as is fraud, *see* 18 U.S.C. § 981(a)(1)(C) (civil forfeiture of any property which constitutes or is derived from proceeds traceable to wire or mail fraud violations not affecting a financial institution, or bank fraud violation), § 981(a)(2) (civil forfeiture of any property which constitutes or is derived from proceeds traceable to wire or mail fraud violations affecting a financial institution), and § 982(a)(2)(A)-(B) (criminal forfeiture of any property constituting or derived from proceeds obtained as the result of a violation of the mail, wire fraud,

10

or bank fraud statute). Accordingly, dual forfeitability is met because the conduct that gives rise to forfeiture under French law also would give rise to forfeiture if the underlying criminal acts had been committed in the United States.

The bank accounts and real estate sought for seizure by the French court are at this time substitute assets, and upon completion of the investigation may be deemed proceeds. They may be subject to forfeiture upon conviction in the United States. *See, e.g.*, 18 U.S.C. § 982 (a)(1)(A) (criminal forfeiture of any property involved in §§ 1956, 1957 violations); 28 U.S.C. § 2461 (modes of recovery for offenses authorizing criminal or civil forfeiture). Forfeiture of substitute property also is authorized under 21 U.S.C. § 853(p). That the French Orders effectively are to restrain substitute assets in the criminal case is not a bar to enforcement in the U.S., even if this authority is not found in the text of our criminal forfeiture statute, 21 U.S.C. § 853. That the French Orders reference only seizure rather than restraint also is not a bar to enforcement.

    **C.**    **This Court Should Enforce the French Orders by Issuing a Restraining Order in a Manner Consistent with 18 U.S.C. § 983(j)(1).**

The French Orders reflect the intention of French authorities to seek asset forfeiture should the criminal case against Frederic Artru, Christopher Cantell, and others, result in convictions. Thus, the United States, in accordance with its treaty obligations, seeks to guarantee the effectiveness of any future confiscation order against Cantell's U.S. assets.

Applying the language of § 2467(d)(3)(A) and structure under 18 U.S.C. § 983(j)(1)(A), this Court possesses the authority to issue an order—consistent with the French Orders—to "preserve the availability of property . . . subject to forfeiture" for the duration of the foreign criminal and confiscation proceedings. *See* 28 U.S.C. § 2467(d)(3)(A) (specifying that the district court may enter a restraining order at any time before or after the initiation of foreign forfeiture proceedings). As such, this Court should recognize the French Orders issued by Sophie Mougenot,

11

...

Pre-Trial Investigating Judg, and enforce them by restraining the specified assets and prohibiting Cantell, and all others, from depleting, transferring, selling, mortgaging, and/or encumbering the properties located in the United States or in any way diminishing their values.

## VI.    CONCLUSION

The United States respectfully requests that this Court enforce the attached French Orders, consistent with U.S. obligations under the relevant treaty, by entering an order pursuant to this Court's authority under 28 U.S.C. § 2467(d)(3)(A), (d)(3)(B)(ii), and 18 U.S.C. § 983(j)(1)(A). The United States will attempt to provide notice and a copy of any Order issued by this Court to Christopher Cantell once the assets are secured.  To the extent necessary, the United States also will seek the assistance of France's Ministère de la Justice to provide notice and a copy of any Order issued by this Court to Christopher Cantell once the assets are secured.

Respectfully submitted,

DEBORAH L. CONNOR, CHIEF
MONEY LAUNDERING AND
ASSET RECOVERY SECTION

By:    /s/ *Ryan M. Christian*
RYAN M. CHRISTIAN
Trial Attorney
U.S. Department of Justice
Criminal Division
Money Laundering and Asset Recovery Section
1400 New York Avenue NW, 10100
Washington, DC  20530
Telephone: 202-353-2817
Email: Ryan.Christian2@usdoj.gov
Georgia Bar No. 227657

Attorneys for Applicant
UNITED STATES OF AMERICA